[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-11974
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 19, 2011
JOHN LEY
CLERK

D.C. Docket No. 3:09-cv-00503-MMH-JRK

LAWYER DOE,

Plaintiff,

CAROLYN S. ZISSER,

Plaintiff - Appellant,

versus

THE FLORIDA BAR,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 19, 2011)

Before CARNES, PRYOR and FAY, Circuit Judges.

CARNES, Circuit Judge:

This case reminds us of the observation of the Grand Inquisitor in Gilbert and Sullivan's The Gondoliers.  Upon finding that all ranks of commoners and servants have been promoted to the nobility, he protests that there is a need for distinction, explaining that:  "When everyone is somebody, then no one's anybody."[1]  The same is true of a state bar's certification process.  If every attorney who practices in an area is certified in it, then no one is anybody in that field.  The easier it is to be certified, the less that certification means.

The goal of the Florida Bar's certification process is to recognize in various fields of specialization exceptional attorneys, meaning those who stand out from others in all of the ways that make an attorney outstanding.  To ensure that certification achieves its purpose, the Bar has established a body of rules and procedures, including a confidential peer review process, so that an attorney certified in an area of practice truly is "somebody" in that field.   Without such rules and procedures, the process, the decisions it produces, and the resulting recognition would not amount to much.

I.

Under the Florida Bar's rules, if an applicant successfully completes all the

---

[1] W. S. Gilbert, The Savoy Operas 543 (Wordsworth Editions 1994) (1889) (spelling altered).

requirements for certification in the chosen field, including receiving satisfactory peer reviews, she is board certified as a "specialist" in that field for a period that lasts no longer than five years. See R. Regulating Fla. Bar 6-3.5 & 6-3.6(a). After that time, she may apply for recertification and, if she does, the process includes another round of confidential peer review. Id. at 6-3.6. The Bar offers certification in some twenty-five different areas of specialization, but in every case the process is a wholly optional one. Id. at 6-3.4(d). Certification is not required as a prerequisite for practicing law in any field. Id. at 6-3.4(b).

A.

Carolyn Zisser was initially certified by the Florida Bar as a marital and family law specialist in 1985. She successfully applied for recertification in 1990 and 1995, but her application for recertification in 2000 was denied on the basis of unsatisfactory peer reviews. Zisser filed an appeal of that decision with the Florida Bar, and for reasons not clear from the record, the Bar's "Certification Plan Appeals Committee" stayed her appeal between 2003 and 2004. Due to the passage of time, both the Florida Bar and Zisser stipulated to the dismissal of her appeal without prejudice, and Zisser was allowed to file an entirely new application for recertification in 2005.

The Bar's "Marital and Family Law Certification Committee" considered

that application and notified her in March of 2006 that it intended to recommend to the "Board of Legal Specialization and Education" that her application be denied, again on the basis of adverse peer review. According to a letter the Committee sent to Zisser, she had received peer ratings of "below average to poor" in a number of categories of assessment. The letter continued:

> Apart from the ratings provided by your peers and the judiciary, the committee also considered the supplemental commentary. The unvarying assessment is your tendency to over litigate your cases disproportionate to their size and to overcharge on your fees, resulting in excessive costs creating a financial hardship for clients and a disservice to opposing counsel, the judiciary, and the legal system. Many find your knowledge in the area of family law to be exceptional, but your professional judgment poor. Discourtesy to opposing counsel and instances of unnecessary scheduling difficulties were cited.

After receiving that letter, Zisser notified the Florida Bar of her intention to submit additional documentation to refute the Committee's assessment. She also requested and was granted an extension of time to prepare a rebuttal.

In mid-April 2006 Zisser sent the Committee a nine-page letter that contested the peer review findings and also provided the names of additional lawyers and judges for the Committee to contact. After considering that letter and other information Zisser sent in over the course of several months, the Committee advised Zisser in August 2006 that it still intended to recommend that her

4

application be denied. The Bar's Board of Legal Specialization and Education considered and affirmed the Committee's recommendation on November 3, 2006, formally denying Zisser's application.

Zisser then requested an opportunity to appear before the Board to challenge its decision. That request was granted and a hearing was held in March 2007. Before the hearing Zisser submitted extensive documentation to the Board, including a "Motion to Remand" her application to the Committee for reconsideration. That motion pointed out that she was listed in the 2007 editions of the Bar Register of Preeminent Lawyers and Florida Super Lawyers. It also included a nine-page "Memorandum of Law" alleging that the denial of her recertification solely on the basis of anonymous peer review amounted to a violation of due process under both the Florida and United States Constitutions because it denied her a meaningful opportunity to confront and impeach witnesses and to challenge the peer review findings.

At the hearing before the Board in March 2007, Zisser was accompanied by counsel. The Certification Committee was represented by one of its members, who reiterated the Committee's reasons for recommending that Zisser's application for recertification be denied:

There were numerous—and not isolated, but numerous people who

5

have responded that Ms. Zisser should not be recertified. And as a committee member, I was there witnessing the deliberations, going over the responses, reviewing the responses, and it was—to answer some of Ms. Zisser's concerns, the people that responded to the peer review are preeminent family law attorneys in Jacksonville, there are people who responded who are not preeminent family law attorneys in Jacksonville, and there were judges or judicial officials that responded. It was a very broad range process, and there were numerous, numerous people who responded that Ms. Zisser should not be recertified.

Following the hearing, the Board voted to deny both recertification and Zisser's motion to remand.

Zisser then filed two more internal appeals with the Bar, first to the Certification Plan Appeals Committee and then to the Bar's Board of Governors itself. Both appeals resulted in decisions affirming the denial of recertification.

Having exhausted her internal appeals, Zisser sought review in the Florida Supreme Court, filing a twenty-five page petition with thirty-seven appendices attached, again contending that the confidential peer review procedures amounted to a denial of due process. On September 25, 2008, the Florida Supreme Court issued a one-sentence order denying her petition for review.

B.

Zisser then filed in federal district court this lawsuit against the Florida Bar. She asserted as-applied and facial challenges to the confidential peer review part

6

of the Bar's certification rules, seeking injunctive and declaratory relief under the Due Process Clause of the Fourteenth Amendment. See 28 U.S.C. §§ 2201–02; 42 U.S.C. § 1983. Following a bench trial on a stipulated record, the district court issued an order in March 2010 denying relief and dismissing the case. See Zisser v. The Florida Bar, ___ F. Supp. 2d ___, No. 3:09-cv-503-J-34JRK, 2010 WL 4282103 (M.D. Fla. Mar. 29, 2010). The court concluded that it did not have subject matter jurisdiction to consider Zisser's as-applied challenges to the confidential peer review rules because they were barred by the Rooker-Feldman[2] doctrine. Id. at *6–11. As for her facial challenges, the court found that Zisser had failed to satisfy the first element of a procedural due process violation because she had not been deprived of a constitutionally protected property or liberty interest. Id. at *11–22.

In this appeal from the district court's judgment, Zisser challenges the rulings on both her as-applied and facial challenges to the Bar's peer review rules.

II.

We review de novo a district court's decision that the Rooker-Feldman doctrine deprives it of subject matter jurisdiction. Dale v. Moore, 121 F.3d 624,

---

[2]Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303 (1983).

626 (11th Cir. 1997). Under that doctrine federal district courts generally lack jurisdiction to review a final state court decision. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149 (1923). Instead, "the authority to review final decisions from the highest court of the state is reserved to the Supreme Court of the United States." Moore, 121 F.3d at 626.

As the district court observed, the facts of the Feldman decision are quite similar to those of this case. The two plaintiffs in Feldman petitioned the District of Columbia Court of Appeals to waive its requirement that bar applicants have graduated from a law school accredited by the American Bar Association. Feldman, 460 U.S. at 465–66, 470–71, 103 S.Ct. at 1306, 1308–09. After that court denied their petitions, they brought suit in federal district court. Id. at 466–73, 103 S.Ct. at 1306–10. After the district court and the Court of Appeals for the District of Columbia Circuit disagreed on whether the district court had jurisdiction over their complaints, the Supreme Court granted certiorari. Id. at 474, 103 S.Ct. at 1310.

The Court reaffirmed its earlier decision in Rooker that federal district courts lack the authority to review final decisions of state courts, but it also recognized that the "crucial question" raised in the case was whether the

8

proceedings before the D.C. Court of Appeals were "judicial in nature." Id. at 476, 103 S.Ct. at 1311. The Court held that the D.C. Court of Appeals had acted judicially when it denied the plaintiffs' petitions because it had been "called upon to investigate, declare, and enforce liabilities as they [stood] on present or past facts and under laws supposed already to exist." Id. at 479, 103 S.Ct. at 1313 (alteration in original) (quotation marks omitted). The Supreme Court added that it does not matter if a case does not "assume the form commonly associated with judicial proceedings" because the form itself is not significant. Id. at 482, 103 S.Ct. at 1314. "It is the nature and effect which is controlling." Id.

Zisser's as-applied challenges to the Florida Bar's rules regarding confidential peer review are clearly barred by Rooker-Feldman. She argues that her case is distinguishable because "[i]n Feldman, the District of Columbia Court of Appeals issued a final decision denying the substance of Feldman's petition . . . in contrast to the Florida Supreme Court's mere declination of review in this case, which is not a review on the merits." Br. of Appellant at 34–35. She points out that the D.C. Court of Appeals' order in Feldman stated, "On consideration of the petition of Marc Feldman . . . it is ORDERED that applicant's petition is denied." Id. at 468, 103 S.Ct. at 1307 (alteration omitted). Zisser argues that language means Feldman's petition was denied "on the merits of his request for a waiver,"

9

Br. of Appellant at 36, but her petition to the Florida Supreme Court was not. She insists that she was instead "denied *review*." Id. (emphasis in original). The point, she says, is that she is "not seeking a re-examination of a final judgment of a state court because the state court denied review, rather than having decided and adjudicated the challenge on the merits." Id. at 39.

Even if Zisser has identified a distinction between the <u>form</u> the denial of review took in <u>Feldman</u> and the form it took here, that is at most a distinction without a difference. As the Supreme Court made clear in <u>Feldman</u>, the form of a proceeding is not significant, because "[i]t is the nature and effect which is controlling." Id. at 482, 103 S.Ct. at 1314. Zisser sought review of the Florida Bar's decision in the Supreme Court of Florida. She filed with that court a lengthy petition with numerous attachments, and her petition was denied. There is no indication that the denial was unconnected to the merits.[3] The district court correctly reasoned that the <u>Rooker-Feldman</u> doctrine deprived it of jurisdiction to decide Zisser's as-applied challenges.

---

[3]Zisser argues that because the Florida Supreme Court did not request a response from the Florida Bar before denying her petition and because the court cited only to the Bar's rules on certification rather than her constitutional challenges to those rules, such facts amount to evidence that her petition was denied without the court's considering its merits. The court had before it Zisser's petition, which included her due process arguments, and the fact that the court did not request the Florida Bar to file a response to that petition more likely shows only that the court did not need any argument from the Bar to convince it that Zisser's position lacked merit.

III.

Zisser's amended complaint also includes a facial challenge on due process grounds to the Florida Bar's rules requiring confidential peer review as a part of the recertification process.  In contrast with an as-applied challenge, "[a] facial challenge . . . seeks to invalidate a statute or regulation itself."  United States v. Frandsen, 212 F.3d 1231, 1235 (11th Cir. 2000).  We review de novo a district court's determination of the facial constitutionality of a statute.  See Rodriguez ex rel. Rodriguez v. United States, 169 F.3d 1342, 1346 (11th Cir. 1999).

Zisser specifically contends that the Bar's rules allowing an applicant to be denied certification or recertification solely on the basis of undisclosed peer review comments deny procedural due process because they do not provide an applicant with sufficient notice as to the content of the statements or the identities of the persons who made them.  As a result, an applicant cannot meaningfully challenge an adverse finding based on the peer review process.

"A § 1983 action alleging a procedural due process clause violation requires proof of three elements:  a deprivation of a constitutionally-protected liberty or property interest; state action; and constitutionally inadequate process."  Cryder v. Oxendine, 24 F.3d 175, 177 (11th Cir. 1994).  The state action element clearly exists, but Zisser's claim fails because neither certification nor recertification in a

11

field of legal specialization amounts to a cognizable property or liberty interest.

A.

In <u>Board of Regents v. Roth,</u> 408 U.S. 564, 92 S.Ct. 2701 (1972), the Supreme Court outlined the contours of a constitutionally protected property interest, holding that to have a property interest in a benefit, a person "must . . . have a legitimate claim of entitlement to it." <u>Id.</u> at 577, 92 S.Ct. at 2709. The Court explained:

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

<u>Id.</u> In <u>Perry v. Sindermann</u>, 408 U.S. 593, 92 S.Ct. 2694 (1972), a companion case to <u>Roth</u>, the Court re-emphasized that "[a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing." <u>Id.</u> at 601, 92 S.Ct. at 2699; <u>see</u> <u>also</u> <u>Morley's Auto Body, Inc. v. Hunter</u>, 70 F.3d 1209, 1213 (11th Cir. 1995) (discussing <u>Roth</u> and <u>Perry</u> and noting that <u>Perry</u> "reiterated the conceptual basis for the creation of property rights"). And in <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 102 S.Ct. 1148 (1982), the Court once again stressed the need to focus the analysis of a

12

property claim on state law, holding, "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" Id. at 430, 102 S.Ct. at 1155.

For her argument that a lawyer seeking certification or recertification has a constitutionally protected property interest, Zisser relies primarily on our decision in Shahawy v. Harrison, 875 F.2d 1529 (11th Cir. 1989), but her reliance is misplaced. Shahawy involved a physician's challenge to a hospital's revocation of his staff privileges. We held, consistent with our "well-established precedent," that "a physician's medical staff privileges" are a property interest protected by the Fourteenth Amendment. Id. at 1532. As the district court in this case correctly reasoned, however, Shahawy and similar cases do not fit these circumstances because "unlike hospital staff privileges, which provide physicians with the ability to employ their skills at a hospital, board certification provides no such benefit and is irrelevant to an attorney's ability to practice or appear before any court." Zisser, 2010 WL 4282103, at *13. Attorneys who are not certified as specialists in a field can practice in any court in Florida where a certified attorney can practice.

The Shahawy decision that Zisser relies on was actually the second time a dispute between that doctor and hospital had been before us. The first time, Shahawy v. Harrison, 778 F.2d 636 (11th Cir. 1985), involved the doctor's

challenge to the revocation of his cardiac catheterization lab privileges. There we noted that the "crucial question [was] whether Shahawy's 'claim of entitlement' is so legitimate 'that the Constitution, rather than the political branches, must define the procedure attending its removal.'" Id. at 642 (citation omitted). We answered that question by ruling against Shahawy, because he had not "allege[d] injury to a contract right nor an inability to practice medicine without the cardiac catheterization privileges," nor had he "demonstrated that a mutually explicit understanding existed resulting in his entitlement to the cardiologic privileges denied him." Id. at 643.

In Zisser's case, neither the Florida Bar rules, nor any other part of that state's law, create a "legitimate claim of entitlement," Roth, 408 U.S. at 577, 92 S.Ct. at 2709, or a "mutually explicit understanding[]," Perry, 408 U.S. at 601, 92 S.Ct. at 2699. Certification is contingent on a number of factors, including favorable results from a confidential peer review. That part of the process is no secret. It is set out in the rules themselves, see R. Regulating Fla. Bar 6-3.5 & 6-3.6, and every applicant for certification acknowledges that in a waiver she signs. The waiver Zisser signed stated as follows:

> I further understand that the peer review process is unable to serve its purpose unless the individuals from whom information is requested are guaranteed complete confidentiality. By applying for

14

certification, I expressly agree to the confidentiality of the peer review process and expressly waive any right to request any information obtained through peer review at any stage of the certification process.

(altered from the original in all capital letters). For present purposes, the effect of that waiver as a waiver of any federal constitutional rights does not matter. What matters is that the existence of that language reinforces the fact that certification is not an entitlement but instead is contingent on the result of the peer review process, and it reinforces the fact that the identity of the peers doing the reviewing will be kept confidential insofar as state law is concerned. The combination of the rules and the waiver language in the application form operates to preclude any "legitimate claim of entitlement" under state law, Roth, 408 U.S. at 577, 92 S.Ct. at 2709, and any "mutually explicit understanding[]," Perry, 408 U.S. at 601, 92 S.Ct. at 2699, that Zisser was entitled to certification without favorable peer review or to know the identities of the peer reviewers.

It might be different if an attorney could not practice law without being certified. See Schware v. Board of Bar Examiners, 353 U.S. 232, 238–39, 77 S.Ct. 752, 756 (1957) ("A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment."); Willner v.

15

Committee on Character and Fitness, 373 U.S. 96, 106, 83 S.Ct. 1175, 1181 (1963) (finding that petitioner was entitled to procedural due process where he was denied admission to the New York Bar without a hearing on the charges that had been filed against him); Shaw v. Hospital Authority of Cobb County, 507 F.2d 625, 628 (5th Cir. 1975) (holding that "the right to practice any of the common occupations of life, and for others to engage the individual to perform those acts which are his occupation" are rights protected by the Fourteenth Amendment).[4] Certification as a specialist in a particular area of the law is not, however, required to practice in that or any other area of the law. See R. Regulating Fla. Bar 6-3.4(b).

B.

Zisser also contends that certification or recertification in a legal practice field is a constitutionally protected liberty interest because a lawyer whose application is denied suffers damage to her reputation in the legal community. To prevail on a claim for harm to a liberty interest in one's reputation, a plaintiff must show: "(1) a stigmatizing allegation; (2) dissemination or publication of that allegation; and (3) loss of some tangible interest due to publication of the

---

[4]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

stigmatizing allegation." Bank of Jackson County v. Cherry, 980 F.2d 1362, 1367 (11th Cir. 1993) (citations omitted). The record in this case does not establish that any of those elements are implicated when an application for certification is denied.

First, as the district court pointed out, the Florida Bar's certification program:

> seeks to honor and identify to the public the most exceptional attorneys practicing in their chosen field. A denial of certification, at most, denotes that the candidate, in the eyes of the Florida Bar, does not fall within this select group, nothing more. Surely not all can claim the vestiges of the elite.

Zisser, 2010 WL 4282103, at *19. The lack of certification in a field of specialty simply means that an attorney is, like the vast majority of attorneys, not certified in that field. The failure to convey a badge of distinction is not stigmatizing.

Second, there is nothing in the record to suggest that the Florida Bar publishes the names of attorneys who have been denied certification or recertification, or the reasons why. The fact that Zisser's application was denied apparently became public only because she appealed that denial and filed this lawsuit.

Third, although our determination that neither of the first two elements is met makes it unnecessary to discuss the third one, we doubt that it has been

17

established. See Conn v. Gabbert, 526 U.S. 286, 291–92, 119 S.Ct. 1292, 1295–96 (1999) (recognizing that while an earlier line of cases "indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment," those cases "all deal[t] with a complete prohibition of the right to engage in a calling"). Because certification is not required to practice in any particular field of law, and the full range of legal work is available to any member of the Florida Bar regardless of certification, it probably is not a "tangible interest." In any event, being certified as a legal specialist is not a protected liberty interest.

**AFFIRMED.**