[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-11918
Non-Argument Calendar
_____

D.C. Docket No. 9:15-cv-81522-KAM


KAREN C. YEH HO,

                                                            Plaintiff-Appellant,

versus

WELLS FARGO BANK, N.A.,

                                                            Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 21, 2018)

Before MARCUS, MARTIN and ROSENBAUM, Circuit Judges.

PER CURIAM:

Karen Yeh Ho, proceeding pro se, sued Well Fargo Bank, N.A. for damages she says resulted from Wells Fargo's foreclosure on her house. The district court dismissed her complaint for failure to state a claim, as barred by the Florida litigation privilege, and, in the case of one claim, as barred by the Rooker-Feldman doctrine.[1] After careful review, we affirm the district court in part and reverse in part.

## I. Background

In February 2012, Wells Fargo, acting as a loan servicer for Fannie Mae, filed a foreclosure complaint in Florida state court against Ho and her husband. Ho moved to dismiss the foreclosure complaint, asserting Wells Fargo's lack of standing among other defenses.

In August 2013, Ho received an unsolicited loan modification offer from Wells Fargo. The offer required her to continue residing in the home, make three trial payments, continue to make timely payments thereafter, and sign relevant final modification documents. She made the three trial payments. In November 2013, she received the loan modification agreement from Wells Fargo, which she completed and returned to Wells Fargo. Wells Fargo received Ho's signed loan modification agreement on December 6, 2013. But Ho never got a written confirmation of Wells Fargo's receipt of the agreement or any indication of

---

[1] See Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S. Ct. 149 (1923), and D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S. Ct. 1303 (1983).

2

whether the agreement was complete or other loan modification options were available.

In March 2014, the Florida state court denied Ho's pending motion to dismiss the foreclosure complaint. The state court set a trial date of July 17. Six weeks before trial, new counsel appeared on behalf of Ho. Two days before trial, Ho moved for a continuance, which the court denied on the day of trial. When the delay was not allowed, counsel for Ho and Wells Fargo stipulated to the entry of judgment in favor of Wells Fargo. Ho had no knowledge of the stipulation and judgment and did not consent to it or sign it. The state court entered final judgment and set a foreclosure sale for November 14.

On October 14, the court granted Ho's attorney's request to withdraw from representing her. That day, Ho, proceeding pro se, moved to vacate the foreclosure sale and set a new trial date. Then, on November 10, just days before the sale, she moved to cancel it. The state court denied these motions, and, on November 14, Ho's home was sold.

On December 17, 2014, Ho received the first written response from Wells Fargo about her loan modification agreement. This was over a year after she'd sent the agreement to Wells Fargo and after her home was sold. In the letter, Wells Fargo explained it rejected Ho's loan modification agreement as incomplete because it was unsigned by her husband.

After the sale, Ho, still proceeding pro se, continued filing motions seeking relief from the foreclosure based on Wells Fargo's fraud. Ultimately, on January 16, 2015, the state court denied her request to vacate the final judgment or rescind the foreclosure sale. She appealed from the state court's order, and the Fourth District Court of Appeal affirmed.

Soon after her appeal concluded, Ho filed this action in federal court. Her complaint includes a claim for the violation of the Real Estate Settlement Practices Act ("RESPA") as well as a claim for "wrongful foreclosure." [2] In her complaint, she says she could have kept her house if Wells Fargo had not foreclosed on it in violation of RESPA. She alleges the foreclosure caused her to suffer more than $362,000 in losses from money she had invested in the home, lost rental income, and unnecessary fees and costs in defending the foreclosure action. She also alleges wrongful foreclosure because Wells Fargo lacked standing to enforce the mortgage and fraudulently secured the foreclosure.

Wells Fargo moved to dismiss Ho's complaint. The district court granted Wells Fargo's motion, determining that her allegations either failed to state a

---

[2] The complaint also asserts claims for: (i) fraudulent inducement and fraudulent misrepresentation (Counts II–III); (ii) violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.203 (Count IV); (iii) wire or radio fraud, 18 U.S.C. § 1343 (Count V); (iv) violations of the Consumer Financial Protection Act, 12 U.S.C. § 5481 (Counts VII–VIII); (v) violations of the Fair Debt Collection Practice Act, 15 U.S.C. § 1692e (Count IX); and (vi) infliction of emotional distress (Count X). The district court dismissed these claims. Because Ho has not addressed these claims on appeal, she has abandoned them. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam).

claim, were barred by Florida's litigation privilege, or were barred by the Rooker-Feldman doctrine. This appeal followed.

## II.  Standard of Review

A district court's dismissal of a complaint for failure to state a claim is reviewed de novo. Almanza v. United Airlines, Inc., 851 F.3d 1060, 1066 (11th Cir. 2017). We accept the facts alleged in the complaint as true and construe them in the light most favorable to Ho, the plaintiff. Id. To survive a motion to dismiss, a complaint need only allege sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). The complaint must "raise a right to relief above the speculative level," but it need not contain "detailed factual allegations." Id. at 555, 127 S. Ct. at 1964–65. Pro se complaints are held to a less stringent standard than those drafted by lawyers. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998) (per curiam).

We also review de novo "a district court's decision that the Rooker-Feldman doctrine deprives it of subject matter jurisdiction." Doe v. Fla. Bar, 630 F.3d 1336, 1340 (11th Cir. 2011).

## III. Discussion

## A. Whether the complaint states a claim for the violation of RESPA

The complaint alleges Wells Fargo violated RESPA and its implementing regulations, known as Regulation X.  See 12 U.S.C. § 2605(f); 12 C.F.R. § 1024.41(a).  The RESPA claim primarily relies on the notification procedures relating to the review of loss mitigation applications, 12 C.F.R. § 1024.41(b)(2)(B), (c), and the prohibition on foreclosure sales.  Id. § 1024.41(g).  Section 1024.41(b)(2)(B) requires servicers to notify borrowers in writing whether their loss mitigation applications are complete or incomplete within five days of receipt.  12 C.F.R. § 1024.41(b)(2)(B).  If the application is incomplete, the servicer must "state the additional documents and information the borrower must submit to make the loss mitigation application complete."  Id.  Similarly, § 1024.41(c)(1) requires servicers to evaluate applications and notify borrowers of their determination in writing within thirty days of receiving an application.  Id. § 1024.41(c)(1).  Except for two exceptions not relevant here, subsection (c)(1)'s requirements apply equally to complete and incomplete applications.  Id. § 1024.41(c)(2)(i).  Finally, § 1024.41(g) prohibits a servicer from conducting a foreclosure sale "[i]f a borrower submits a complete loss mitigation application" after a servicer commences a foreclosure proceeding but more than thirty-seven days before a foreclosure sale.  Id. § 1024.41(g).  One exception to this general prohibition permits such a sale if "[t]he servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for

6

any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied." Id. § 1024.41(g)(1).

Ho alleged Wells Fargo received her signed agreement on December 6, 2013 and failed to provide her with written notice of receipt of her loan modification application within five days. See id. § 1024.41(b)(2)(B). The complaint alleges that sending the signed agreement constituted a loss mitigation application as defined in 12 C.F.R. § 1024.31.[3] Wells Fargo does not argue otherwise. We therefore assume for purposes of this appeal that Ho sent a loss mitigation application to Wells Fargo, which it received on December 6, 2013.

Ho further alleges Wells Fargo failed to provide written notice that her application was incomplete and failed to evaluate her application within thirty days of receiving it. See id. § 1024.41(c). Ho attached Wells Fargo's December 17, 2014 letter to her complaint. That letter references only Wells Fargo's attempts to contact Ho by telephone and does not suggest any prior attempt to send her written notice of the status of her loan modification.

---

[3] Section 1024.31tion X defines "Loss mitigation application" as "an oral or written request for a loss mitigation option that is accompanied by any information required by a servicer for evaluation for a loss mitigation option." 12 C.F.R § 1024.31. "Loss mitigation option" means "an alternative to foreclosure offered by the owner or assignee of a mortgage loan that is made available through the servicer to the borrower." Id.

Ho's complaint also alleges Wells Fargo violated the prohibition on seeking a foreclosure sale before responding to her.  See id. § 1024.41(g).  This allegation resembles a scenario addressed in the commentary of the Consumer Financial Protection Bureau ("CFPB") about the adoption of the loss mitigation procedures:

> Scenario 2. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing for a foreclosure process, but 90 days or more exist before a foreclosure sale, the servicer (1) must review the complete loss mitigation application within 30 days, (2) must allow the borrower at least 14 days to accept or reject an offer of a loss mitigation option, and (3) must permit the borrower to appeal the denial of a loan modification option pursuant to § 1024.41(h). Further, for all loss mitigation applications received in this timeframe, the servicer must comply with the requirements for acknowledging a loss mitigation application and providing notice of additional information and documents necessary to make an incomplete loss mitigation application complete. The servicer may not proceed to foreclosure judgment or order of sale, or conduct a foreclosure sale, unless these procedures are completed.

See Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,821 (Feb. 14, 2013) ("Mortgage Servicing Rules").  Thus, the CFPB commentary contemplates that servicers who foreclose on a home while in violation of § 1024.41(b)(2)(B) also violate § 1024.41(g).

Like the scenario addressed by the CFPB, Ho submitted an application to Wells Fargo, but did not receive a written response as required by § 1024.41(b)(2)(B) or (c)(1) before her home was sold in violation of § 1024.41(g).  Ho's complaint therefore alleges sufficient facts to state a plausible violation of RESPA and Regulation X.  At this stage of proceedings, she has also sufficiently

8

alleged a causal connection between Wells Fargo's RESPA violation and her actual damages. See 12 U.S.C. § 2605(f)(1)(A); Renfroe v. Nationstar Mortg., LLC, 822 F.3d 1241, 1246 (11th Cir. 2016). We therefore conclude Ho's complaint states a plausible claim for relief under RESPA and Regulation X.

The district court found otherwise, dismissing Ho's RESPA claim because she failed to allege the existence of a valid agreement between herself and Wells Fargo. But an enforceable agreement is not a prerequisite to a claim for a violation of § 1024.41(b)(2)(B) and (g). Section 1024.41(b)(2)(B) requires servicers to notify borrowers whether their loss mitigation applications are complete or incomplete within five days of receiving the application. 12 C.F.R. § 1024.41(b)(2)(B). If the application is incomplete, the servicer must "state the additional documents and information the borrower must submit to make the loss mitigation application complete." Id. And § 1024.41(g), as interpreted by the CFPB, prohibits foreclosures after a borrower submits a "complete loss mitigation application" or submits an incomplete application without notifying the applicant that additional documents are necessary. See 12 C.F.R. § 1024.41(g), (g)(1); Mortgage Servicing Rules, 78 Fed. Reg. at 10,821. Neither provision requires the existence of an enforceable agreement, and Ho's RESPA claim should not have been dismissed for that reason.

9

The district court alternatively held Ho's RESPA claim was barred by Florida's litigation privilege.   Under Florida law, absolute immunity attaches to "any act occurring during the course of a judicial proceeding, . . . so long as the act has some relation to the proceeding."  See Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co., 639 So. 2d 606, 608 (Fla. 1994).  For example, the Florida Supreme Court has held that the litigation privilege bars claims under the Florida Consumer Collection Practices Act that are based on acts that occur during judicial foreclosure proceedings "so long as the act has some relation to the proceeding."  Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 384 (Fla. 2007) (quotation omitted) (applying the litigation privilege to bar a claim that default letters violated the Florida Consumer Collections Practices Act).

We've described ourselves as "Erie-bound" to apply Florida's litigation privilege to "state-law claims adjudicated in federal court."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1274–75 (11th Cir. 2004).  However, there is no published opinion of this court, in which Florida's litigation privilege was held to bar a federal claim.  Under the facts alleged in Ho's complaint, the Florida litigation privilege is preempted by RESPA.  See 12 U.S.C. § 2616 ("This chapter does not annul, alter, or affect, or exempt any person subject to the provisions of this chapter from complying with, the laws of any State with respect to settlement

practices, <u>except to the extent that those laws are inconsistent with any provision of this chapter, and then only to the extent of the inconsistency</u>." (emphasis added)). Applying the Florida litigation privilege to bar Ho's RESPA claim is inconsistent with the cause of action authorized by § 1024.41(a) and (g). These subsections permit a borrower to sue a servicer that moves for "foreclosure judgment, or order of sale" in a state foreclosure proceeding after the borrower submits a "complete loss mitigation application." 12 C.F.R. § 1024.41(a), (g). Because application of the litigation privilege is inconsistent with the cause of action authorized by RESPA, it cannot bar Ho's RESPA claim.

## B. Whether Ho's "wrongful foreclosure" claim is barred by the <u>Rooker-Feldman</u> doctrine

The District Court held Ho's "wrongful foreclosure" claim is barred by the <u>Rooker-Feldman</u> doctrine. This doctrine, generally speaking, provides that lower federal courts lack subject-matter jurisdiction to review final judgments of state courts. <u>Target Media Partners v. Specialty Mktg. Corp.</u>, 881 F.3d 1279, 1284 (11th Cir. 2018). Since <u>Rooker</u> and <u>Feldman</u> were decided, "the Supreme Court concluded that the inferior federal courts had been applying <u>Rooker-Feldman</u> too broadly." <u>Target Media</u>, 881 F.3d at 1285. The doctrine "is not simply preclusion by another name," <u>Lance v. Dennis</u>, 546 U.S. 459, 466, 126 S. Ct. 1198, 1202 (2006), and does not "override or supplant preclusion doctrine." <u>Exxon Mobil Corp. v. Saudi Basic Indus.</u>, 544 U.S. 280, 284, 125 S. Ct. 1517, 1522 (2005).

11

Instead, the doctrine is "confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  Id. at 284, 125 S. Ct. 1521–22.

The Rooker-Feldman doctrine, narrow as it is, applies to Ho's claim that Wells Fargo wrongfully foreclosed on her house due to lack of standing or fraud. Ho's state court motions challenged the foreclosure action based on Wells Fargo's alleged lack of standing and fraud.  The state court rejected those arguments, and she appealed to the Fourth District Court of Appeals, which affirmed.  After the ruling of the Florida appeals court, Ho filed this action asking the district court to find the foreclosure was wrongful based on fraud and Wells Fargo's lack of standing.  Her action, if successful, would "effectively nullify the state court judgment" and necessarily hold "that the state court wrongly decided the issues." Casale v. Tillman, 558 F.3d 1258, 1260 (11th Cir. 2009) (per curiam) (quotation omitted).  For that reason, the district court did not err in concluding it lacked subject-matter jurisdiction over Ho's wrongful foreclosure claims under the Rooker-Feldman doctrine.

**C. Whether Ho stated a claim for marital status discrimination**

On appeal, Ho argues Wells Fargo violated the Equal Credit Opportunity Act's ("ECOA") prohibition of discrimination against credit applicants on the basis

12

of marital status.  See 15 U.S.C. § 1691(a)(1).  The complaint did not include an ECOA claim, and the possibility that Wells Fargo violated the ECOA was first raised in a motion to strike Wells Fargo's motion to dismiss, which the district court treated as a response brief.  The ECOA claim is therefore not properly before this Court on appeal.  Cf. Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (per curiam) (holding claim raised in brief in opposition to summary judgment was not before the court on appeal because it was not in the complaint).  To the extent Ho contends Wells Fargo violated the Fair Housing Act, 42 U.S.C. § 3605(a), or Florida Statutes § 708.08 those claims are also not before us for the same reason.  The proper way to raise a new claim is to amend the complaint through the procedures in Federal Rule of Civil Procedure 15.  See Gilmour, 382 F.3d at 1315.

## IV. Conclusion

We affirm the dismissal of Ho's "wrongful foreclosure" claim as barred by the Rooker-Feldman doctrine.  We reverse the dismissal of Ho's RESPA claim and remand to the district court.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**