[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-15638
Non-Argument Calendar
_____

D.C. Docket No. 4:17-cv-00236-MW-CAS

WILLIAM CASTRO,

Plaintiff - Appellant,

versus

R. FRED LEWIS,
in his official capacity as Justice of the Florida Supreme Court,
BARBARA J. PARIENTE,
in her official capacity as Justice of the Florida Supreme Court,
JORGE LABARGA,
in his official capacity as Justice of the Florida Supreme Court,
PEGGY A. QUINCE,
in her official capacity as Justice of the Florida Supreme Court,
CHARLES T. CANADY,
in his official capacity as Justice of the Florida Supreme Court,
RICKY POLSTON,
in his official capacity as Justice of the Florida Supreme Court,
C. ALAN LAWSON,
in his official capacity as Justice of the Florida Supreme Court,
THOMAS ARTHUR POBJECKY,
in his individual capacity,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 17, 2019)

Before MARCUS, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant William Castro appeals from the district court's orders granting the motions to dismiss filed by the Justices of the Florida Supreme Court sued in their official capacity (the "Justices") and Thomas Arthur Pobjecky, the General Counsel of the Florida Board of Bar Examiners (the "Board"). On appeal, Castro argues that the district court erred by: (1) dismissing the complaint against all the appellees for lack of subject matter jurisdiction under the Rooker-Feldman[1] doctrine; and (2) dismissing the complaint against Pobjecky for lack of standing. After thorough review, we affirm.[2]

We review de novo the district court's dismissal for lack of subject matter jurisdiction based on the Rooker-Feldman doctrine. See Lozman v. City of Riviera Beach, 713 F.3d 1066, 1069 (11th Cir. 2013).

_____

[1] Rooker v. Fid. Tr. Co., 263 U.S. 413 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462(1983).

[2] Because we affirm the district court's dismissal of Castro's claims against all of the appellees on Rooker-Feldman grounds, we do not address any of the remaining arguments made on appeal.

The relevant background is this.  In 1994, Castro, a former criminal defense attorney in Florida, was charged and convicted in federal court on several felony charges, including bribery, arising out of his arrangement with a state court judge who agreed to appoint Castro as a court-appointed defense attorney in exchange for a percentage of the money Castro earned from the appointments.  As a result of his criminal conviction, the Florida Supreme Court entered an order in April 1994 suspending Castro from the practice of law in Florida; it ultimately disbarred him in November 1998, effective, nunc pro tunc, May 12, 1994, and prohibited him from seeking readmission for a period of ten years.  See Fla. Bar v. Castro, 728 So. 2d 205 (Fla. 1998).  In accordance with the 1998 disbarment order, Castro applied for readmission to the Florida Bar in 2007, and the Florida Board of Bar Examiners conducted a formal hearing in 2010.  Following the hearing, the Board's five-member formal hearing panel was not in agreement and split three to two to deny admission.  There was some discrepancy over how much longer Castro would be denied admission; while the hearing panel's majority indicated on the record that Castro should be given a permanent denial for being part of "a court corruption scheme" that was so egregious and extreme, the panel's note-taker, who was in the two-member minority, completed a "Findings Worksheet" that did not have an option for permanent denial and checked an option for a recommendation of denial

3

for a two-year period.  The Board sent Castro a "Notice of Board Action," indicating that the panel had decided to deny admission with a two-year disqualification period.

Using the formal hearing record, Pobjecky, as the Board's General Counsel, then drafted the Board's recommendation to the Florida Supreme Court, which provided that "[t]he board recommends that William Castro not be readmitted to The Florida Bar."  The Board received the draft recommendation, along with the "Findings Worksheet" and a cover letter from the Board's Executive Director noting that different from the Findings Worksheet, the draft recommendation "does not set forth a specific period of disqualification" and asked that "[i]f you disagree with this approach, please state what action you wish to take."  The recommendation was approved by the Board, without any changes to the length of disbarment or otherwise, and sent to the Florida Supreme Court.

On Castro's petition seeking review of the Board's recommendation, the Florida Supreme Court issued a decision permanently denying Castro readmission to the Florida Bar.  See Fla. Bd. of Bar Exam'rs re: Castro, 87 So. 3d 699, 702 (Fla. 2012), cert. denied, Castro v. Fla. Bd. of Bar Exam'rs, 568 U.S. 932 (2012).  The Florida Supreme Court detailed Castro's "scheme involving bribery and kickbacks to a sitting judge," and described this "misconduct, involving corruption within the legal system," as "particularly egregious."  Id.  It decided that although Castro had engaged in thousands of community service hours "in an effort to show his

4

rehabilitation," "we agree with the Board's conclusion that no demonstration of rehabilitation would ever suffice to allow Castro's readmission to the legal profession." Id. Justice Pariente filed a special concurrence, ultimately agreeing with the majority's decision. Id. at 703-04.

At that point, Castro reviewed the record from the Board hearing (which he had received on a compact disc ("CD") two years earlier), and concluded that the formal hearing panel had instead recommended a denial of admission with an opportunity to reapply in two years instead of a permanent denial. Based on his review of the records, he moved to vacate the Florida Supreme Court's decision, which he claimed had been fraudulently procured by the Board's misconduct. In response to the Florida Supreme Court's order for Castro to show cause why his motion should not be dismissed as unauthorized, Castro argued that it had the inherent authority to do so and authority under the Florida Constitution. In its response, the Board acknowledged the Florida Supreme Court's "general jurisdiction of this matter," and addressed the merits of Castro's allegations of misconduct. The Board noted that due to initial confusion, the Notice of Board Action erroneously, and regrettably had informed Castro that the panel voted for a denial of admission with a two-year reapplication period, but when the Board later sent the final recommendation to Castro, the cover letter noted that the final recommendation differed from the Notice of Board Action he'd received. The

Board's response to the Florida Supreme Court's show-cause order added that when the panel received the draft recommendation for its approval, the enclosed cover letter specifically had highlighted the inconsistency in the length of disbarment between the Findings Worksheet and the draft recommendation, but that the panel had approved the draft recommendation as written with no comment. The Board concluded its response by arguing that the Florida Supreme Court should dismiss Castro's motion as unauthorized because there was no fraud, misrepresentation or other misconduct by members of the formal hearing panel, and no reason for the case to be reopened. Upon receiving the responses to its show-cause order, the Florida Supreme Court summarily dismissed the motion to vacate as unauthorized. Castro again filed a petition for writ of certiorari, which the United States Supreme Court also denied. See Castro v. Fla. Bd. of Bar Exam'rs, 134 S. Ct. 1761 (2014).

Thereafter, Castro filed a complaint in federal district court against the Justices in their official capacity, and Pobjecky in his individual capacity. The complaint alleged that the disbarment procedure had violated Castro's substantive due process rights and liberty interest to pursue his chosen profession; procedural due process rights to notice and opportunity to be heard; procedural due process right to an impartial tribunal; and right of access to the courts. The complaint also included a count for common law fraud under Florida law against Pobjecky. Thereafter, the United States District Court for the Northern District of Florida

6

granted the Justices' motion to dismiss for lack of subject matter jurisdiction based on the Rooker-Feldman doctrine, and, later, granted Pobjecky's motion to dismiss based on Castro's lack of standing, and alternatively, the Rooker-Feldman doctrine. The district court then entered an amended order removing language indicating that the dismissal was with prejudice, and denied Castro's motion for reconsideration. Castro timely appealed the orders dismissing his complaint.

In this case, the district court properly dismissed Castro's lawsuit against all of the appellees for lack of subject matter jurisdiction under the Rooker-Feldman doctrine. The Rooker-Feldman doctrine is a jurisdictional rule created by the Supreme Court that precludes the lower federal courts from reviewing state court judgments. Alvarez v. Att'y Gen. for Fla., 679 F.3d 1257, 1262 (11th Cir. 2012). The Rooker–Feldman doctrine "is confined to cases of the kind from which [it] acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). In order to determine which claims invite rejection of a state court decision, we consider "whether a claim was either (1) one actually adjudicated by a state court or (2) one 'inextricably intertwined' with a state court judgment." Target Media Partners v. Specialty Mktg. Corp., 881 F.3d 1279, 1286 (11th Cir. 2018). A federal claim is inextricably

7

intertwined with a state court judgment "if it asks to effectively nullify the state court judgment, or it succeeds only to the extent that the state court wrongly decided the issues." Id. (quotation omitted). A federal claim is not "inextricably intertwined" "when there was no reasonable opportunity to raise that particular claim during the relevant state court proceeding." Id. (quotation omitted). Thus, for a federal claim to be inextricably intertwined with a state court judgment, the federal claim must raise "a question that was or should have been properly before the state court." Id.

Here, the district court lacked jurisdiction over Castro's lawsuit under the Rooker-Feldman doctrine because his claims are "inextricably intertwined" with the Florida Supreme Court's judgment permanently denying his admission to the Bar. Castro's complaint alleged that Pobjecky, as the Board's General Counsel, drafted proposed factual findings, legal conclusions and a recommended disposition for review by the Board panel that conducted Castro's readmission hearing. Using a transcribed portion of the panel's deliberations in drafting this document, Pobjecky allegedly committed fraud by providing that the Board recommended a permanent denial. The Board panel approved Pobjecky's draft as written. Castro appealed the Board's recommendation to the Florida Supreme Court, which agreed with the Board's recommendation and ordered that Castro's prior conduct warranted permanent denial of readmission to the Bar. On Castro's motion to vacate, the Florida Supreme Court rejected Castro's argument alleging fraud in the drafting of

8

the Board's recommendation. Based on these allegations, Castro's federal complaint raised due process claims, as well as a count for common law fraud against Pobjecky.

For starters, challenges to decisions by state supreme courts disciplining attorneys for misconduct often are precluded by the Rooker-Feldman doctrine. In Doe v. Fla. Bar, 630 F.3d 1336, 1340-41 (11th Cir. 2011), we affirmed the Rooker-Feldman dismissal of a plaintiff's §1983 claims arising out of the Florida Bar's use of confidential peer reviews as part of the attorney certification process, because her claims would require the district court to review the Florida Supreme Court's decision on her certification application. And in Berman v. Fla. Bd. of Bar Exam'rs, 794 F.2d 1529 (11th Cir. 1986), an unsuccessful bar applicant brought § 1983 claims arising out of the Florida Bar's refusal to apply a repealed rule that had exempted graduates of Florida law schools from taking the bar exam. We affirmed the district court's Rooker-Feldman dismissal, holding that it lacked jurisdiction over a claim "that a state court's judicial decision in a particular case has resulted in the unlawful denial of admission to a particular bar applicant." Id. at 1530. As we've said, "it is clear that the Rooker–Feldman doctrine forbids frustrated Florida bar applicants from seeking an effective reversal of the Florida Supreme Court's decision in federal district court." Dale v. Moore, 121 F.3d 624, 627 (11th Cir. 1997); see also Johnson v. Supreme Court of Ill., 165 F.3d 1140, 1141 (7th Cir.1999) ("[T]he Rooker–Feldman doctrine eliminates most avenues of attack on attorney discipline.").

9

Castro claims that Pobjecky fraudulently prepared a document that ultimately was before the Florida Supreme Court when it considered his readmission to the Bar, which is similar to the circumstances in Dale, 121 F.3d at 627. There, we held that a plaintiff's disability discrimination claims against the Florida Bar were barred by the Rooker-Feldman doctrine, where he was challenging a mental health report the Bar had prepared about him in connection with his application to the Bar. Id. Even though the Florida Supreme Court admitted Dale to the Florida Bar, we held that Dale's claim was "inextricably intertwined" with the state court's decision on his bar application because it would have required the federal district court to review the Florida Bar's inquiry into his fitness to practice law and the report it prepared for purposes of his bar admission. Id. So too here. By asking the federal court to review the Board's inquiry into Castro's eligibility for readmission and the recommendation it gave to the Florida Supreme Court, Castro's claims are inextricably intertwined with the state court's decision on his application for readmission.

To the extent Castro argues that the source of his injury was the allegedly fraudulent Board's recommendation prepared by Pobjecky, and not the Florida Supreme Court's ultimate decision denying his readmission, that is a distinction without a difference. When the Florida Supreme Court reviewed the Board's recommendation in denying his readmission, it considered the record and issued its own decision permanently denying him readmission to the Bar, which included a

separate concurrence from one of the Justices.  As we see it, Castro suffered no injury until the Florida Supreme Court itself denied him readmission.[3]

Indeed, Castro's prayer for relief shows that he is asking the district court to review and vacate the Florida Supreme Court's final judgment.  Castro directly asks for an order from the district court vacating the Florida Supreme Court's final judgment.  He also seeks relief that would accomplish the same result indirectly.  He seeks a mandatory injunction requiring the Justices to admit him to the Bar or to issue a judgment imposing a two-year readmission ban, as well as a declaration that the Justices will continue to unlawfully enforce the final judgment unless enjoined, and an injunction against its enforcement.  Throughout his prayer for relief, he refers repeatedly to the judgment as "unlawful."  Based on the prayer for relief, we likewise reject Castro's argument that he is not claiming that the Florida Supreme Court ruled erroneously.  The relief Castro seeks plainly asks the district court to find that the Florida Supreme Court wrongly decided Castro's case, "effectively nullif[ying] the

---

[3] Because the complaint alleges that the fraudulent conduct occurred during the course of Castro's bar readmission proceedings, Castro appears to be alleging "intrinsic fraud" in the Florida Supreme Court proceedings; intrinsic fraud "applies to fraudulent conduct that arises within a proceeding and pertains to the issues in the case that have been tried or could have been tried."  Parker v. Parker, 950 So. 2d 388, 391 (Fla. 2007) (quotation omitted).  However, we know of no court to have ever recognized an intrinsic fraud exception to the Rooker–Feldman doctrine.

state court judgment." Target Media Partners, 881 F.3d at 1286 (quotation omitted).[4]

Castro tries to avoid Rooker-Feldman by claiming he did not have an opportunity to raise his instant claims in state court. But Castro admits that before he sought readmission by the Florida Supreme Court, he was aware of at least these revealing documents -- the Notice of Board Action that informed Castro that the panel voted for a denial of admission with a two-year reapplication period, and a cover letter to Castro (accompanying the final recommendation) that noted that the final recommendation differed from the Notice of Board Action in its length of disbarment. In addition, Castro admits that he had received a CD with even more information about the Board's decision-making process, including the internal report of Board proceedings that allegedly revealed Pobjecky's fraud, but he did not review the contents of the CD. All of these materials were transmitted to the Florida Supreme Court for its review of the Board's recommendation. See Fla. Bar Admiss. R. 3-40.1 ("At the time of the filing of the answer brief, the executive director will transmit the record of the formal hearing to the court."). And in Castro's 2012

---

[4] While the complaint seeks damages from Pobjecky, it provides no basis for any entitlement to damages. Rather, the complaint concedes that damages would not afford Castro the relief he seeks, averring that "[a] damages award against Defendant Pobjecky alone would constitute an inadequate legal remedy" unless the Florida Supreme Court's judgment permanently disbarring him were overturned. In other words, Castro's damages claim could succeed "only to the extent that the state court wrongly decided the issues" when it permanently disbarred him, and was "inextricably intertwined" with the state court decision. See Alvarez, 679 F.3d at 1263 (quotation omitted).

petition for certiorari, which he filed with the United States Supreme Court before he allegedly reviewed the contents of the CD, he expressly cited to the Notice of Board Action, as well as a cover letter from the Executive Director to the Board, which explained that the Findings Worksheet from the Board had checked a two-year disbarment period, while the Board majority had voted for permanent disbarment, and gave the Board the option to change the disbarment period in the final recommendation.

Thus, even before Castro initially sought review of the Board's recommendation in the Florida Supreme Court, he was on notice that there was an inconsistency in the record concerning the length of his disbarment period, and could have either sought more information from the Board, or reviewed the CD he already had in hand, which contained the additional information that formed the basis for his claims in federal court. We've held that a federal claim is "inextricably intertwined" for Rooker-Feldman purposes "when there was [a] reasonable opportunity to raise that particular claim during the relevant state court proceeding." Target Media Partners, 881 F.3d at 1286 (quotation and citation omitted). So while we've held that a plaintiff did not have a reasonable opportunity to raise a claim in state court where a judgment was entered pursuant to ex parte proceedings of which he had no actual notice, Wood v. Orange Cty., 715 F.2d 1543, 1548 (11th Cir. 1983), we've also held that a plaintiff had a reasonable opportunity to raise disability

discrimination claims against the Florida Bar in state court where he was given notice of a mental health report the Bar had prepared about him and the Bar's rules permitted him to complain about the Bar's recommendation to the Florida Supreme Court, yet he failed to do so, Dale, 121 F.3d at 627.  We've also held that plaintiffs had a reasonable opportunity to present constitutional claims during state juvenile court proceedings where "[t]he plaintiffs were both parties to the state court proceeding, and . . . they were present and participated in the state court proceedings," yet failed to raise those claims. Goodman ex rel. Goodman v. Sipos, 259 F.3d 1327, 1334 (11th Cir. 2001).  Here, before Castro appeared in the Florida Supreme Court the first time around, he knew that the Board had conducted disbarment proceedings, he had access to all of the information forming the basis of his instant claims, and, at the very least, he had a reasonable opportunity to assert these claims in state court, even though he failed to do so.  Because his instant claims "should have been properly before the state court" when he initially sought review, Castro's claims are inextricably intertwined with the state court judgment. Target Media Partners, 881 F.3d at 1286.[5]

---

[5] Moreover, once Castro unsuccessfully sought review of the Florida Supreme Court's first decision in the United States Supreme Court, he reviewed the contents of the CD and filed a motion with the Florida Supreme Court to vacate its disbarment order, raising all the same claims he raises now.  Although the Florida Supreme Court summarily dismissed Castro's motion to vacate, the court requested responses from both parties, who admitted the court had jurisdiction over the motion and argued the fraud claims on the merits.  As we've said in this context, "the Supreme Court made clear in Feldman [that] the form of a proceeding is not significant, because '[i]t is the nature and effect which is controlling.'"  Doe, 630 F.3d at 1341 (quoting Feldman, 460 U.S. at

Accordingly, the district court properly dismissed Castro's complaint for lack

of subject matter jurisdiction based on the <u>Rooker-Feldman</u> doctrine.

**AFFIRMED**.

---

482). There is little to suggest that as a procedural matter, the Florida Supreme Court could not have granted Castro relief based on the information contained in his motion to vacate. Thus, not only did Castro have a reasonable opportunity to raise his claims in his first appearance before the Florida Supreme Court, but it's likely that he actually raised these claims in the motion to vacate, further supporting the "inextricably intertwined" nature of the claims.